**YARDS DEVELOPERS LIMITED PARTNERSHIP, Plaintiff,**

v.

**SUBWAY REAL ESTATE CORP., Defendant.**

No. 95 C 6820.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 28, 1995.

Kevin Posen, Teller, Levit & Silvertrust, P.C., Chicago, IL, for Plaintiff.

Attorney for Defendant NA.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Yards Developers Limited Partnership ("Yards Developers," treated as a singular noun) has filed this action against Subway Real Estate Corp. ("Subway"), seeking to invoke federal jurisdiction on diversity-of-citizenship grounds. Based on its initial review of Yards Developers' Complaint,[1] this Court sua sponte dismisses this action for lack of subject matter jurisdiction.

To begin with, Yards Developers has failed to satisfy its affirmative obligation to establish the existence of diversity as between the parties. As to Subway, the Complaint's Jurisdiction and Venue ¶ 1 properly identifies both facets of its dual corporate citizenship under 28 U.S.C. § 1332(c)(1)[2]: Delaware is its state of incorporation, while its principal place of business is here in Illinois. But even though virtually every relevant portion of the Complaint—the case caption, the Complaint's introductory paragraph, Statement of Claim ¶ 1, the prayer for relief, Yards Developers' signature to the Complaint, and the lease on which Yards Developers sues (Complaint Ex. 1)—*all* iden-

---

1. This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir.1986):

The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

2. All further references to Title 28's provisions will simply take the form "Section—."

tify Yards Developers as an Indiana limited partnership, Jurisdiction and Venue ¶ 1 erroneously characterizes it as "a corporation incorporated under the laws of the State of Indiana, with its principal place of business in Indianapolis, Indiana."

■ Where a partnership (even a limited partnership such as Yards Developers) is named as a party litigant, the relevant citizenship for federal diversity purposes is that of all partners and not that of the partnership itself, even though state law may permit the partnership to sue in its firm name (*Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1073 (7th Cir.1992) (per curiam)). Thus the location of Yards Developers' "principal place of business" is entirely irrelevant, just as is the state of its formation as a limited partnership. And that being so, the Complaint has not established the existence of the necessary diversity.

It would seem more likely than not that Yards Developers' glitch in that respect would be curable, for the necessary diversity would in fact exist if none of its general or limited partners is a citizen of either Delaware or Illinois. And that possibility would ordinarily lead this Court to give Yards Developers an opportunity to cure the Complaint's jurisdictional defect within a very limited time span (see Section 1653). But in this instance the existence of another (and very likely noncurable) jurisdictional flaw calls for a straight-out dismissal of the current Complaint.

■ According to Statement of Claim ¶ 5, Subway owes Yards Developers $36,304.62 under the Lease between the parties (an amount confirmed by Complaint Ex. 2). That of course falls well short of the over–$50,000 floor required for diversity jurisdiction. Yards Developers attempts to close that gap (and more) by its allegation that Lease § 17.2 renders Subway liable to Yards Developers "for the rental obligations which become immediately due and payable for the twenty-four (24) months following such date,"

which according to Statement of Claim ¶ 10 adds another $38,490.04 to Subway's current obligation.

It should be said parenthetically that the 24–month reference (though not the claimed dollar amount) reflects a misstatement of what the Lease provides. Complaint Ex. 3 is a photocopy of a notice of default that was sent to Subway on November 3 of this year, stating "that if you do not cure the delinquency [then $33,898.87] in the time required, you will be placed in default of your Lease." For that purpose the next paragraph of the notice of default designated "the time required" to be "within ten (10) days of your receipt of this letter," and the effect of nonpayment was stated in the letter as:

> forc[ing] Landlord to take such steps deemed necessary to protect its interest, when Tenant has been placed in default. These steps may include, but are not limited to, a suit for collection of unpaid rents, together with interest therein, attorneys' fees and court costs incurred in any such action, as well as the institution of a suit to regain possession of your premises.

As that language reflects, the notice of default did not itself purport to terminate the Lease. Nor, it may be observed, does the Complaint terminate the Lease either. Thus the portion of Lease § 17.2 that spells out Yards Developers' remedies in the event of termination have not been called into play.[3] But even if the notice of default and the Complaint were somehow read to constitute a termination of the Lease (as already indicated, an overly generous reading), the remedy that Lease § 17.2 specifies as the dollar amount payable by the terminated tenant is "the excess, if any, of the total rent and charges reserved in this Lease for the remainder of the Lease Term over the then reasonable rental value of the Premises for the remainder of the Lease Term." Thus what Yards Developers has erroneously referred to as a 24–month rental obligation is instead a statement of a *ceiling* on the

---

**3.** As is true in most commercial leases, Lease § 17.2 gives Yards Developers as Landlord a number of alternative remedies. In this instance those include not only termination of the Lease but also a reletting of the leased premises without such termination.

amount recoverable by Yards Developers over and above the pre-default delinquency.

But as stated earlier, that mischaracterization has not been carried through into the amount that Yards Developers claims as damages in Statement of Claim ¶ 10. In this instance Complaint Ex. 2 indicates that the Lease's Commencement Date (see Lease § 2.3) was January 1, 1992, the first date on which Subway was charged with a month's fixed minimum rent. That means that the first Lease Year began on February 1, 1992 (see Lease § 2.4), so that the Lease's term would end on January 31, 1997 in the regular course of events. And sure enough, Statement of Claim ¶ 10 uses that latter date in arriving at the $38,490.04 figure.

But counsel for Yards Developers has ignored two factors in advancing that gross figure as the predicate for the amount in controversy. For one thing, counsel has ignored Lease § 17.2's own provision under which Subway must be given credit against that gross figure for "the then reasonable rental value of the Premises"—an unknown amount that will certainly diminish and might perhaps actually swallow up the ad damnum, but even more importantly for present purposes an *unspecified* amount whose absence is fatal in jurisdictional terms. And second, the Lease § 17.2 acceleration clause fails to take into account the value of the use of money—the fact that dollars collectible in a lump sum today are worth more than dollars to be received in installments in the future. To that extent, then, the Lease provision includes in part an unenforceable penalty (see, e.g., *Heller Financial, Inc. v. Burry,* 633 F.Supp. 706, 707 (N.D.Ill.1986) and the decision in *Lake River Corp. v. Carborundum Co.,* 769 F.2d 1284, 1290 (7th Cir. 1985) on which *Heller* relied).

It is unnecessary to extend this already overly protracted discussion further. Suffice it to say that the existence of federal subject matter jurisdiction has unquestionably not been established by the Complaint here, and that Yards Developers' ability to establish it is sufficiently in doubt to justify dismissal of this action by reason of the existing jurisdictional defects. Accordingly both the Complaint and this action are dismissed for lack of subject matter jurisdiction.